UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CASE NO.: 3:05-CV-341-R

PAULINE MARIE FLEISCHMAN,
Individually and as Executrix for the Estate
of KENNETH CALVIN FLEISCHMAN, SR.                                   PLAINTIFF

v.

CSX TRANSPORTATION, INC.                                            DEFENDANT

## MEMORANDUM OPINION

This matter comes before the Court on the Defendant, CSX Transportation, Inc.'s

("CSXT") Motion for Summary Judgment and Partial Motion for Summary Judgment (Docket

#36).  The Plaintiff, Pauline Fleischman ("Mrs. Fleischman"), as Executrix for the estate of her

late husband, Kenneth Fleischman ("Mr. Fleischman") has responded (Docket #37), and the

Defendant has replied to that response (Docket #40).  This matter is now ripe for adjudication.

For the following reasons, the Defendant's Motion for Summary Judgment regarding the prior

release is **GRANTED** and the Defendant's partial motion for summary judgment regarding the

statute of limitations for personal injury is **GRANTED**.

## BACKGROUND

Mr. Fleischman worked for the predecessors of CSXT, Louisville & Nashville Railroad

("L&N") and Seaboard System Railroad, Inc. ("Seaboard") from 1941 until 1983, as a machinist

at the railroad in southern Louisville.  Prior to his retirement, Mr. Fleischman attended a medical

screening evaluation where he had some chest x-rays performed.  After examining the x-rays,

Dr. James Merchant ("Dr. Merchant") informed Mr. Fleischman that his results showed exposure

to asbestosis and bilateral pleural disease.  Mr. Fleischman sought a second opinion, and it was

later confirmed that he had asbestosis.  After finding out that he had asbestosis, Mr. Fleischman

decided to give up smoking.

In 1983, Mr. Fleischman filed suit against Seaboard in federal court for personal injury under the Federal Employers' Liability Act ("FELA") against the railroad.  Prior to settling with the Defendant, Mr. Fleischman participated in other asbestos litigation as a deponent, where he received fees for his testimony.  On July 8, 1986, Mr. Fleischman settled his case for $50,000, and signed a release that relinquished claims against the railroad.  Mrs. Fleischman also signed the release as a witness.  In pertinent part, the release stated:

> For and in full compromise, settlement, discharge and satisfaction of all claims, demands, or cause of action on account of all injuries to the person, including those that may hereafter develop as well as those now apparent, and all damages to and loss of property as a result of including but not limited to, any claim or cause of action, known or unknown, present or out of any alleged exposure to "Asbestos," "Asbestos Containing Materials," or other "Toxic Substances," during the course of my employment with the Seaboard System Railroad, Inc...In making this settlement, no promise has been made to me of future employment and the amount paid [to] me is in settlement of my claim as aforesaid...And it is distinctly understood and agreed by me that the sole and only consideration inducing me to execute this release is the payment to me of the sum of money mentioned above.

In addition to the release, Mr. Fleischman also signed a separate independent agreement that stated in pertinent part:

> I understand it is claimed that by paying a railroad retirement tax, part of this payment might be apportioned as time lost and railroad retirement credit received therefor, but I agree that no part of this payment covered by this release is for time lost, and agree that this is a full settlement of all damages claimed, including loss of earning power.

Fourteen years after settling that matter Mr. Fleischman developed cancer.  On September 19, 2000, he was diagnosed with mesothelioma; a cancer of the lining of the lung that is attributed to asbestos exposure.  After battling the cancer for about two and one-half years, Mr. Fleischman passed away on March 2, 2003.  About two (2) years after his death, on June 9,

2

2005, the widow and the Executrix of the estate of Mr. Fleischman, Mrs. Fleischman, brought

suit in this court, pursuant to FELA, 45 U.S.C. §51.  Mrs. Fleischman claims she is entitled to

damages for personal injury and the wrongful death of her husband.  The Defendant contends

that the claims by Mrs. Fleischman are precluded by the release signed by Mr. Fleischman in

1986.  Further, the Defendant argues that even if the release does not bar the claims, her suit is

barred by the three (3) year statute of limitations found within FELA under 45 U.S.C. §56.

## STANDARD

Summary judgment is available under Fed. R. Civ. P. 56(c) if the moving party can

establish that the "pleadings, depositions, answer to interrogatories, and admissions on file,

together with the affidavits, if any, show that there is no genuine issue as to any material fact and

that the moving party is entitled to a judgment as a matter of law."  In determining whether

summary judgment is appropriate, a court must resolve all ambiguities and draw all reasonable

inferences against the moving party.  *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475

U.S. 574, 587 (1986).

[N]ot every issue of fact or conflicting inference presents a genuine issue of material

fact."  *Street v. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989).  The test is "whether the

party bearing the burden of proof has presented a jury question as to each element in the case."

*Hartsel v. Keys,* 87 F.3d 795, 799 (6th Cir. 1996).  The plaintiff must present more than a mere

scintilla of the evidence.  To support his position, he must present evidence on which the trier of

fact could find for the plaintiff.  *See id.* (citing *Anderson v. Liberty Lobby*, 477 U.S. 242, 251-52

(1986)).  Mere speculation will not suffice to defeat a motion for summary judgment: "[t]he mere

existence of a colorable factual dispute will not defeat a properly supported motion for summary

judgment.  A genuine dispute between the parties on an issue of material fact must exist to render summary judgment inappropriate." *Monette v. Electronic Data Systems Corp.,* 90 F. 3d 1173, 1177 (6th Cir. 1996).  Finally, while Kentucky state law is applicable to this case pursuant to *Erie Railroad v. Tompkins*, 304 U.S. 64 (1938), a federal court in a diversity action applies the standards of Fed. R. Civ. P. 56, not "Kentucky's summary judgment standard as expressed in *Steelvest, Inc. v. Scansteel Serv. Ctr., Inc.*, Ky., 807 S.W.2d 476 (1991)." *Gafford v. General Electric Co.*, 997 F.2d 150, 165 (6th Cir. 1993).

## DISCUSSION

As mentioned *supra*, the Defendant asserts that the 1986 release signed by Mr. Fleischman released the Defendant from all asbestos related claims in the future, including the Plaintiff's claims for personal injury and wrongful death from mesothelioma in 2002.  The Defendant further contends that FELA's three (3) year statute of limitations precludes the suit by Mrs. Fleischman because Mr. Fleischman discovered his mesothelioma on September 19, 2000, but Mrs. Fleischman did not bring suit against the Defendant until June 9, 2005.  Lastly, CSXT argues that because it is entitled to summary judgment, it is also entitled to a motion in limine regarding any personal injury damages, precluding reference to any pain and suffering, and non-pecuniary damages of the Plaintiff's wrongful death claim.  The Court will address each of these matters separately.

### 1. The 1986 Release signed by Mr. Fleischman

The 1986 release signed by Mr. Fleischman, as it relates to the instant matter, is governed by FELA.  FELA, 45 U.S.C. §55, states:

> [a]ny contract, rule, regulation, or device whatsoever, the purpose or intent of which
> shall be to enable any common carrier to exempt itself from any liability created by

4

> this chapter, shall to that extent be void: Provided, [t]hat in any action brought against any such common carrier under or by virtue of any of the provisions of this chapter, such common carrier may set off therein any sum it has contributed or paid to any insurance, relief benefit, or indemnity that may have been paid to the injured employee or the person entitled thereto on account of the injury or death for which said action was brought.

The United States Supreme Court, in *Callen v. Pennsylvania Railroad Co.*, stated in dicta that "[i]t is obvious that a release is not a device to exempt from liability but is a means of compromising a claimed liability and to that extent recognizing its possibility. Where controversies exist as to whether there is liability, and if so for how much, Congress has not said that parties may not settle their claims without litigation." *Callen v. Pennsylvania Railroad Co.*, 332 U.S. 625, 630-31 (1948). Since that decision, courts have determined that in some instances a signed release of future claims does not violate 45 U.S.C. §55 so long as the release does not attempt to limit the liability of future actions, but instead attempts to settle a dispute.

Both parties have cited the Sixth Circuit Court of Appeals case of *Babbitt v. Norfolk & Western Railway Co.* in support of their claims. *Babbitt v. Norfolk & Western Railway Co.*, 104 F.3d 89 (6th Cir. 1997). In *Babbitt*, the Court narrowed the scope of the decision in *Callen* when determining the effects on a release signed to preclude future claims under FELA. *Babbitt* involved former railroad employees who brought an action for damages under FELA for hearing loss based on claims that they were exposed to excessive noise levels during the course of their work. *Babbitt*, 104 F.3d at 90. The employees signed a "Resignation and Release Agreement," (separation agreement) which was a part of the railroad's voluntary separation program. *Id.* In contrast to the instant matter, the plaintiffs in *Babbitt* did not know of their injury before they signed the release, nor was the release signed in order to resolve a legal dispute between them and the railroad company. *Id.* In addition, the plaintiffs did not receive any compensation for

5

signing the release. *Id.*

The issue before the Court in *Babbitt* on review was whether FELA precluded the railroad company from absolving itself of liability from FELA claims through a general release. *Id.* at 91.  In its analysis, the Court cited *Callen*, stating that "a release of FELA claims can have the same effect as any other release, in that it may constitute a settlement or compromise, rather than an attempt to escape liability." *Id.* at 92 (*citing Callen*, 332 U.S. at 631).

The Court in *Babbitt* went on to distinguish *Callen* from two (2) prior Supreme Court decisions.  In *Philadelphia, Baltimore, & Washington Railroad Company v. Schubert*, and *Duncan v. Thompson*, the Court in *Babbitt* noted that the releases in those matters were void because the releases granted general liability to the railroad, whereas in *Callen*, the release addressed an actual controversy for specific injuries. *Babbitt* at 92-93; *Callen* at 630-31; *Philadelphia, Baltimore, & Washington Railroad Company v. Schubert*, 224 U.S. 603, 612 (1912); *Duncan v. Thompson*, 315 U.S. 1, 7 (1942).  The Court in *Babbitt* held that FELA "is not offended when there is a compromise of a claim of liability that settles a specific injury sustained by an employee." *Id.* at 93.  The Court further determined that "[t]o be valid, a release must reflect a bargained-for settlement of a known claim for a specific injury, as contrasted with an attempt to extinguish potential future claims the employee might have arising from injuries known or unknown by him." *Id.*  In reaching this determination, the Court noted that FELA would not be violated when a release "settles a specific injury sustained by an employee," but would violate 45 U.S.C. §55 if the release is "not executed as part of a specific settlement of FELA claims." *Id.*

State courts within the Sixth Circuit have cited the holding in *Babbitt*.  In *Anderson v.*

6

*A.C. & S., Inc.*, the Ohio Court of Appeals, in analyzing a claim under FELA, held that a release signed by an employee relating to the settlement of an employee's prior asbestosis claim against a railroad company was not valid to exempt the employer from future liability on a survival and wrongful death claim brought by the spouse of the deceased employee. *Anderson v. A.C. & S., Inc.*, 797 N.E.2d 537, 539-540 (Ohio App. 2003). Similar to instant matter, the plaintiff settled his initial claim for asbestosis damages against the employer for $50,000. *Id.* at 539. The release signed by the plaintiff specified that he would not bring a claim against the defendant-employer for any illness or injury "including any and all forms of cancer or mesothelioma, claimed to be related to asbestos or any other substance whether or not presently alleged or manifested." *Id.* at 540. The Court ultimately determined that the release was not valid holding that under *Babbitt* a release "only applies to claims which have already arisen *at the time the release is signed*; the release is valid only where controversies exist, i.e., where it disposes of an accrued FELA claim." *Id.* at 543-44 (emphasis included). The Court in *Anderson* went on to hold that "while one can contract to settle or waive actual FELA *claims*, one may *not* similarly contract to waive all FELA *rights* with respect to claims which have not yet arisen." *Id.* at 544 (emphasis included).

In reaching this determination the Court emphasized how the language of the release demonstrated an intent by the defendant-employer to be exempt from future liability because of the wording used in the release. *Id.* at 543. In particular, the Court noted how the language of the first paragraph described the concern of the defendant-employer to be released from future liability rather than settle the claim. *Id.* at 539-540; 543. In addition, the Court stated that the Sixth Circuit in *Babbitt* adopted a "bright-line rule that a release may be valid only with regard

to injuries that are known at the time the release is executed" and applied that rule in that matter. *Id.* at 544.  When the Court addressed the specificity of the language used by the release in addressing the potential future claims of the plaintiff-employee, the Court stressed that the purpose of the release was not to settle the initial matter, and therefore, did not qualify as a bargained-for settlement. *Id.* at 545.  Instead, the Court determined that language used to release the defendant-employer from liability was overly broad, and did not constitute a settlement under purposes of FELA. *Id.*

The other case that has directly applied *Babbitt* is the Kentucky Court of Appeals case of *Knoth v. Illinois Central Railroad Company*, 2006 WL 1510782 (Ky. App. 2006).  In *Knoth*, the plaintiff-employee initially brought a claim against the defendant-employer under FELA for hearing loss he had suffered while at work at a railroad. *Knoth* at *1.  The plaintiff-employee signed a release, settling the claim for $10,000 and relinquishing the defendant-employer from future liability for known and unknown injuries, including asbestosis, which was specifically listed among many potential complications. *Id.*  Thirteen years after signing the agreement, in 2002, the plaintiff-employee was diagnosed with an asbestos-related disease, which lead him to file a complaint against the defendant-employer under FELA that very same year. *Id.*  The Court stated that the "primary issue in this case is whether the *general* release Knoth signed is valid under 45 U.S.C. §55." *Id.* (emphasis added).  The Court ultimately reasoned that the plaintiff-employee "had no known claim for asbestos-related lung disease until it was diagnosed in 2002," and therefore, held that the release was not valid under the holding of *Babbitt*. *Id.* (*quoting Babbitt* at 93).

The facts in *Babbitt* differ from the instant matter.  Here, Mr. Fleischman signed a

8

settlement for a claim, not a separation agreement, which entitled him to $50,000 for releasing CSXT from future claims related to asbestos exposure.  In contrast to the instant matter, in *Babbitt*, no claim was filed by the plaintiffs until after they had signed the release, and the plaintiffs did not receive any compensation for signing that initial agreement.  Further, the analysis conducted by the state courts in applying *Babbitt* to their fact scenarios does not bind this Court on how it should analyze the case at hand.  Though the Court is bound by the precedent of the Sixth Circuit Court of Appeals, the Court does not feel that the application of *Babbitt* as demonstrated by the courts in *Anderson* and *Knoth* explicitly follows the precedent established by *Babbitt*.[1]

In looking at the steps the Court in *Babbitt* took in reaching its conclusion, the Court first analyzed the prior Supreme Court cases of *Callen*, *Schubert* and *Duncan*.  In doing so, the Court emphasized the differences between the releases in those matters, noting that in *Callen* the release was a specific release, while in *Schubert* and *Duncan* the releases were general releases, and thus were void under FELA. *Babbitt* at 92-93.  The Court went on to hold that "it is clear that FELA is not offended when there is a compromise of a claim of liability that settles a specific injury sustained by an employee." *Id.*  Thus, under *Babbitt*, the first step the Court took in analyzing whether a release is void was to determine whether or not the release is a general or specific release.

---

[1] The Court is aware of the holding of the Third Circuit Court of Appeals case of *Wicker v. Consolidated Rail Corporation*, 142 F.3d 690 (3rd Cir. 1998), and the fact that the Third Circuit chose not to follow what they referred to as the "bright line rule" set forth in *Babbitt*. *Wicker*, 142 F.3d at 700-01.  In that matter, the Court held that "a release that spells out the quantity, location and duration of potential risks to which the employee has been exposed - for example toxic exposure - allowing the employee to make a reasoned decision whether to release the employer from liability for future injuries of specifically known risks does not violate §5 of FELA." *Id.* at 701.  However, despite this holding and the fact that other jurisdictions have adopted the *Wicker* interpretation, this Court is still bound by the precedent of the Sixth Circuit Court of Appeals decision in *Babbitt*.

After recognizing this distinction, the Court in *Babbitt* then incorporated the last paragraph of *Callen* into its analysis, addressing the difference between releases that were designed for the purposes of settling a claim as opposed to releases that attempt to simply release the employer from future liability. *Babbitt* at 91-92 (*citing Callen* at 631).  The Court in *Babbitt* determined releases that sought to settle a specific injury were valid, while releases that merely sought to release the employer from liability for future claims were void under FELA, 45 U.S.C. §55. *Babbitt* at 93.  As such, under *Babbitt*, the second step the Court took in determining whether or not the release was void under FELA was analyzing if the purpose of the release was to settle a claim, and if so, the release would not be per se void under FELA; however, if the purpose of the release was to preclude the employer from future liability, the release would be void under FELA.

Lastly, the Court in *Babbitt* stressed the difference between specific injuries that were bargained for in the settlement verses those that addressed general injuries. *Id.*  The Court noted that "where there exists a dispute between an employer and employee with respect to a *FELA claim*, the parties may release their *specific* claims as part of an out-of-court settlement without contravening the Act [FELA]." (emphasis added).  The Court went on to state that "where the release was not executed as part of a specific *settlement* of FELA claims, 45 U.S.C. §55 precludes the employer from claiming the release as a bar to liability." *Id.* (*citing Schubert* at 612).  Therefore, the third and final step the Court took was to determine whether the settlement involved a FELA claim and whether the injury released in the settlement involved a specific claim by the employee, as compared to a potential general injury.  If a settlement does not address a specific and bargained for claim by the plaintiff-employee, it would be void under

10

FELA.

Accordingly, in abiding by the precedent set forth by the Sixth Circuit in *Babbitt*, in analyzing whether a release signed by a plaintiff-employee is void under FELA 45 U.S.C. §55, this Court must determine: first, (1) whether the release is a general or specific release; second, (2) whether the release offered by the defendant-employer attempts to settle a claim; and lastly, (3) whether the settlement involves a FELA claim and whether the injury released was a specific and bargained for claim by the employee.

In *Babbitt*, as mentioned *supra*, the case did not involve a settlement agreement, but instead dealt with a separation agreement when the plaintiff-employees left the company. *Babbitt* at 90-91.  In addition, there was no FELA claim initially asserted by the plaintiffs in that matter. *Id.*  As such, the separation agreement in that matter could not have addressed specific injuries because the plaintiffs did not have any injuries or potential injuries on record at that time. Accordingly, under the reasoning set forth in *Babbitt*, that separation agreement would have been void under FELA.[2]

In the instant matter, in applying the reasoning of *Babbitt* to the case at hand, the release signed by Mr. Fleischman was a specific release based on the wording of the first paragraph.  In particular, the release states that Mr. Fleischman releases the Defendant from "any claim or cause of action, known or unknown, present or out of any alleged exposure to 'Asbestos,' 'Asbestos Containing Materials,' or other 'Toxic Substances,' during the course of my

---

[2]The Court in *Babbitt* did not determine whether the release in that matter was void, but remanded the case to the District Court to analyze whether the release "was intended to resolve a claim for liability *for the specific injuries in controversy*." *Babbitt* at 93 (emphasis included).  However, the Court concluded their opinion noting "that the Release cannot serve as a bar to the Plaintiff's claims under FELA unless the Release was clearly executed as a settlement for their hearing loss." *Id.*

employment with the Seaboard System Railroad, Inc." Thus, the release did not attempt to relinquish liability on any other claims except those that were in controversy at that time. The release was limited to claims that arose from asbestos related matters, which is supported by the fact that Mr. Fleischman had been diagnosed with asbestosis in 1982. In contrast to *Knoth*, where the Kentucky Court of Appeals determined that the release was a general release, and therefore was void under FELA, here, the release specifies particular claims related to the injury of Mr. Fleischman. Accordingly, the nature of the release signed by Mr. Fleischman was specific.

In addition, the purpose of the release signed by Mr. Fleischman was to settle a claim asserted by him against the Defendant for a FELA violation, not to exempt the Defendant from future liability. In contrast to *Anderson*, the first line of the release in this case at hand states "[f]or and in full *compromise, settlement, discharge and satisfaction of all claims*, demands, or cause of action on account of all injuries to the person, including those that may hereafter develop as well as those now apparent." (emphasis added). Later paragraphs of the release state "[i]n making this settlement, no promise has been made to me of future employment and the amount paid [to] me is in settlement of my claim as aforesaid...And it is distinctly understood and agreed by me that the sole and only consideration inducing me to execute this release is the payment to me of the sum of money mentioned above." Further, the independent agreement signed by Mr. Fleischman emphasizes that the release was a settlement. As such, the fact that the release signed by Mr. Fleischman was a settlement of a claim is not only evident by the fact that he received $50,000 in consideration for signing the release, but also from the fact that the word "settlement" is mentioned twice in the release, including the first sentence. Accordingly,

12

the purpose of the release was to settle the claim filed by Mr. Fleischman, and not to release the Defendant from future claims.

The third and final step of the analysis adopted by the Court in *Babbitt* is not as straightforward as applied to the instant matter. Although the settlement signed by Mr. Fleischman clearly involved a FELA claim, determining whether Mr. Fleischman bargained for releasing his claim against the Defendant for mesothelioma requires more of an in depth analysis. In *Babbitt*, the Court held that:

> [t]o be valid, a release must reflect a bargained-for *settlement* of a known claim for a specific injury, as contrasted with *an attempt to extinguish potential future claims* the employee might have arising from injuries known or unknown by him. (emphasis added).

*Babbitt* at 93. In the context of *Babbitt*, the separation release signed by the plaintiffs did not involve any known or potential injuries that could come from the employees working at the railroad.

The Court in *Anderson* interpreted this holding to stand for the rule that a release is valid only if an injury is known at the time the release was signed. *Anderson* at 401-02. However, the facts in *Anderson* are very similar to the instant matter, and therefore, can be distinguished from *Babbitt*. The Court in *Babbitt* never expressly held that a *settlement* that addresses potential future injuries that may result from a known injury is invalid under FELA, but instead states that *an attempt to extinguish potential future claims* from injuries known or unknown to the employee is void under FELA. *Babbitt* at 93. Thus, the fact that the employer and employee sign a release in order to settle both a pending FELA claim for asbestos exposure and potential future injuries from the known asbestos exposure differs from an employer and employee signing a separation release that does not involve a settlement and a FELA claim. However,

though *Babbitt* does not explicitly stand for the proposition suggested by the Court in *Anderson*, this Court must still determine whether the release signed by Mr. Fleischman specifically addressed a future claim for mesothelioma as part of the settlement.

In the United States Supreme Court case of *Norfolk & Western Ry. Co. v. Ayers*, the Court noted that "[a]sbestos is the only cause of mesothelioma established thus far, although some instances of the disease are not traceable to asbestos." *Norfolk & Western Ry. Co. v. Ayers*, 538 U.S. 135, 142, n. 4 (2003) (*citing* S. Carroll et al., Asbestos Litigation Costs and Compensation: An Interim Report 17 (2002), Petitioner's Supplemental Lodging, p. SL82 ("RAND Institute")).  However, although mesothelioma undoubtedly may be caused by asbestosis, it does not necessarily mean that the release signed by Mr. Fleischman included the specific claim of mesothelioma under FELA standards.  The Court in *Ayers* went on to address this matter more thoroughly in analyzing a legal principle known as the "separate disease rule." In particular, in relating to matters involving asbestos claims, the Court stated:

> the "separate disease rule," which allows a person who has recovered for injuries resulting from asbestosis to bring a new lawsuit--notwithstanding the traditional common-law proscription against splitting a cause of action--if cancer develops. *See Wilson v. Johns-Manville Sales Corp.*, 684 F.2d 111, 120-121 (C.A.D.C.1982) (Ginsburg, J.). The rule has been adopted by a majority of jurisdictions, *see* Henderson & Twerski, Asbestos Litigation Gone Mad: Exposure-Based Recovery for Increased Risk, Mental Distress, and Medical Monitoring, 53 S.C.L.Rev. 815, 821, and n. 22 (2002) (collecting cases), ***and the Court does not suggest that it would not apply in cases brought under FELA***...The separate disease rule is pertinent for at least two reasons. First, it illustrates that courts have found it necessary to construct fair and sensible common-law rules for resolving the problems particular to asbestos litigation. Second, it establishes that a person with asbestosis will not be without a remedy for pain and suffering caused by cancer. That person can and will be compensated if the cancer develops. This eliminates the need courts might otherwise perceive to avert the danger that relief might be foreclosed in the future. (emphasis added).

*Ayers*, 538 U.S. at 174.  Since *Ayers*, the only court that has held that the separate doctrine rule

14

applies to FELA cases was the Court in *Anderson*. *Anderson* at 544.  However, neither case cited by the Court in *Anderson* directly nor indirectly states "[a]sbestosis and mesothelioma, although both caused by exposure to asbestos fibers, are separate and distinct diseases that give rise to separate and distinct causes of action under FELA." *Anderson* at 544; *see Wilson v. Johns-Manville Sales Corp*., 684 F.2d 111 (D.C. Cir. 1982); *Hagerty v. L & L Marine Serv.*, Inc., 788 F.2d 315 (5th Cir. 1985).  Thus, while in non-FELA actions courts have held that asbestosis and mesothelioma constitute separate causes of action, no court has explicitly held that this applies in FELA cases.  As such, though the separate disease rule supports the argument that the settlement signed by Mr. Fleischman did not specify mesothelioma for purposes of a FELA release, the Court must continue to analyze whether Mr. Fleischman bargained for this release of that particular claim.

In looking at the depositions taken by Mr. Fleischman before he signed the release in 1986, not once was the topic of mesothelioma brought up by Mr. Fleischman nor the attorneys for the Defendant at that time.  Although the Defendant argues that one of Mr. Fleischman's depositions may indirectly suggest that he quit smoking out of fear of contracting lung disease, not only does the deposition not explicitly state that conclusion, but it is also known "[w]hile smoking contributes significantly to the risk of lung cancer, it does not bear on the risk of mesothelioma." *Ayers*, 538 U.S. at 142, n. 4.  The Defendant also offers the deposition of James Brotzge ("Mr. Brotzge"), a co-worker of Mr. Fleischman who testified about what he and Mr. Fleischman discussed in regards to their exposure to their asbestosis.  Though Mr. Brotzge states that Mr. Fleischman worried about getting cancer from the asbestosis, it does not mean that Mr. Fleischman specifically bargained for a release of a claim for mesothelioma in his settlement,

15

especially when looking at this statement in light most favorable to the non-moving party, in this case the Plaintiff. As such, the deposition testimony offered by the Defendant does not support the claim that Mr. Fleischman specifically bargained for a release of a claim of mesothelioma against the Defendant in exchange for $50,000. However, although the record reflects that Mr. and Mrs. Fleischman may not have discussed cancer and/or mesothelioma as related to his asbestosis during their depositions, the settlement signed by Mr. Fleischman in 1986 distinguishes this matter from the other leading cases on point that address asbestos exposure that eventually leads to mesothelioma in the context of products liability litigation.

In *Wilson v. Johns-Manville Sales Corp.*, a decision by the United States Court of Appeals for the District of Columbia, written by then Judge Ruth B. Ginsburg, the Court ultimately determined that an initial diagnosis of a worker's asbestosis in 1973 did not start the statute of limitations clock for his right to sue for a later claim of mesothelioma. *Wilson v. Johns-Manville Sales Corp.*, 684 F.2d 111, 112, 120-121 (D.C. Cir. 1982). In *Wilson*, the plaintiff-employee worked in a position for a period of thirty-two (32) years, where he was exposed to asbestos products. *Wilson* at 112-13. After it was discovered that the plaintiff had asbestosis, his health got worse over the next five (5) years until he was diagnosed with mesothelioma in 1978, and passed away that same year. *Id.* at 113. The plaintiff's widow brought suit against his employer and other defendants under District of Columbia survival and wrongful death statutes. *Id.* at 113-14. The district court dismissed the case finding that the statute of limitations precluded the claim. *Id.* at 115. On appeal, the Court held that for purposes of the statute of limitations, asbestosis and mesothelioma were separate claims even though each was attributed to the same asbestos exposure. *Id.* at 120-21.

16

In *Sopha v. Owens-Corning Fiberglas Corp.* and *Hamilton v. Asbestos Corp., Ltd.*, recent decisions issued by the Supreme Courts of Wisconsin and California, respectively, the Courts concurred with the result reached by the D.C. Court of Appeals in *Wilson*. *Sopha v. Owens-Corning Fiberglas Corp.*, 601 N.W.2d 627, 635-638 (Wis. 1999); *Hamilton v. Asbestos Corp., Ltd.*, 998 P.2d 403, 417 (Cal. 2000). Similar to *Wilson*, both of these matters did *not* involve settlements agreed to by the parties before the plaintiff-employee developed mesothelioma.

In *Sopha*, the initial lawsuit brought by the plaintiff-employee against the defendant-employer for exposure to asbestos was dismissed. *Sopha* at 630. The Supreme Court of Wisconsin held that the dismissal did not bar a subsequent action against the defendant for damages from mesothelioma because for purposes of the statute of limitations, the plaintiff brought two separate claims. *Id.* at 636.

In *Hamilton*, while the initial law suit asserted by the plaintiff-employee, alleging exposure to asbestos resulting in asbestosis, was pending against the defendant, the plaintiff developed mesothelioma. *Hamilton* at 405-06. The plaintiff brought an additional suit against the defendant, which was consolidated with the initial suit. *Id.* at 406. Ultimately, the Court determined that the action against defendant for the plaintiff developing mesothelioma was not barred by the statute of limitations because the claims were distinct. *Id.* at 408-411.

In contrast to the instant matter, the facts in *Wilson*, *Sopha*, and *Hamilton*, respectively, differ from the history of the litigation involving Mr. & Mrs. Fleischman. Unlike those matters, here, Mr. Fleischman signed a settlement resolving his claim against the Defendant and releasing the defendant from future claims related to asbestos in exchange for $50,000. Though the courts

17

in those cases held that claims for asbestosis and mesothelioma were separate for purposes of the statute of limitations, the courts did not reach the conclusion that if the parties settled the initial claim with a release that included specific future claims for asbestos exposure, the plaintiff could bring a subsequent claim for mesothelioma.  As noted by the Court in *Babbitt* in quoting the United States Supreme Court case of *South Buffalo Ry. Co. v. Ahern*, "'full and fair compromises of FELA claims do not clash with the policy of [FELA].'" *Babbitt* at 93 (*quoting South Buffalo Ry. Co. v. Ahern*, 344 U.S. 367, 372 (1953)).

Here, the settlement between Mr. Fleischman and CSXT was full and fair.  Mr. Fleischman received $50,000 for agreeing to not only settle his asbestosis claim against CSXT, but also release the defendant from future claims resulting from exposure to asbestos.  As noted by the Supreme Court in *Ayers* and the D.C. Court of Appeals in *Wilson*, mesothelioma can result from exposure to asbestos, and this was a known risk at the time Mr. Fleischman signed his release. *Ayers* at 142, n.4; *Wilson* at 114.  Though the Court is sympathetic to the condition developed by Mr. Fleischman, the settlement agreed to by him in 1986 acknowledged the possibility of this risk.  Unfortunately for Mr. Fleischman, that risk later became a reality; however, that does not entitle Mrs. Fleischman to recover against the Defendant in this matter.

Mesothelioma is a disheartening consequence from exposure to asbestos, and asbestosis is presently the only known cause of mesothelioma cancer.  As stated by the Supreme Court, asbestos litigation is treated uniquely within the courts, and a majority of jurisdictions have recognized that claims against a defendant for asbestosis and mesothelioma are separate and

18

distinct claims, even though they may come from the same source.[3]  However, when Mr.

Fleischman was diagnosed with asbestosis in late 1982 and later when he signed the release in

1986, it was known that asbestosis could eventually cause mesothelioma. *See Wilson*, 684 F.2d

at 120-121.  Though the release signed by Mr. Fleischman did not explicitly list a claim of

mesothelioma, the settlement did include his claim for exposure to asbestos and all known

complications that could arise from asbestos exposure at that time, and that included

mesothelioma, because at the time Mr. Fleischman signed the release, mesothelioma was a

known possibility that could develop from asbestos exposure.  Accordingly, in looking at the

evidence and the law in a light most favorable to the non-moving party, the Defendant has met

its burden under Rule 56 because it has demonstrated that Mr. Fleischman bargained for the

---

[3]*Ayers* at 142; *see Pustejovsky v. Rapid-American Corp.*, 35 S.W.3d 643, 649, n. 3 (Tex. 2000), where the Texas Supreme Court listed the jurisdictions that recognized a separate disease claim for asbestosis and mesothelioma including: "*Hamilton v. Asbestos Corp.*, 22 Cal.4th 1127, 95 Cal.Rptr.2d 701, 998 P.2d 403, 405 (2000) (holding that a plaintiff, who sued the same defendant in two suits for two asbestos related diseases, was not barred by California's statute of limitations and waived the issue of the single action rule); *Sopha v. Owens-Corning Fiberglas Corp.*, 230 Wis.2d 212, 601 N.W.2d 627, 630 (1999) (creating an exception to the single action rule and statute of limitations to allow a second action for a latent mesothelioma against the same defendant after a prior action for asbestosis); *Wilson v. Johns-Manville Sales Corp.*, 684 F.2d 111, 119-21 (D.C.Cir.1982) (concluding diagnosis of asbestosis did not start statute of limitations for mesothelioma caused by same exposure to asbestos); *Miller v. Armstrong World Indus., Inc.*, 817 P.2d 111, 113 (Colo.1991) (en banc) (holding diagnosis of pleural thickening did not start statute of limitations for later claim for asbestosis); *Wilber v. Owens-Corning Fiberglas Corp.*, 476 N.W.2d 74, 78 (Iowa 1991) (finding claim for mesothelioma did not accrue when plaintiff was diagnosed with asbestosis); *Pierce v. Johns-Manville Sales Corp.*, 296 Md. 656, 464 A.2d 1020, 1028 (1983) (holding claim for lung cancer not barred by earlier diagnosis of asbestosis); *Larson v. Johns-Manville Sales Corp.*, 427 Mich. 301, 399 N.W.2d 1, 9 (1986) (concluding claims for asbestos-related cancer not barred by earlier diagnosis of asbestosis when no prior action for asbestosis brought); *Marinari v. Asbestos Corp.*, 417 Pa.Super. 440, 612 A.2d 1021, 1028 (1992) (diagnosis of pleural thickening did not start statute of limitations for action based on lung cancer), modified on other grounds, *Simmons v. Pacor, Inc.*, 543 Pa. 664, 674 A.2d 232, 237-39 (1996) (discussing that a claim based on diagnosis of asymptomatic pleural plaques is sufficient to state a limited claim for medical monitoring damages; discussing with approval that part of *Marinari* that addressed the statute of limitations question); *Potts v. Celotex Corp.*, 796 S.W.2d 678, 685 (Tenn.1990) (holding claim for mesothelioma not barred by earlier diagnosis of asbestosis); *VaSalle v. Celotex Corp.*, 161 Ill.App.3d 808, 113 Ill.Dec. 699, 515 N.E.2d 684, 687-88 (1987) (holding claim for lung cancer not barred by earlier diagnosis of asbestosis); *but see Joyce v. A.C. & S., Inc.*, 785 F.2d 1200, 1203-05 (4th Cir.1986) (concluding, under Virginia law, diagnosis of pleural thickening triggered statute of limitations for all asbestos-related disease); *Matthews v. Celotex Corp.*, 569 F.Supp. 1539, 1542-43 (D.N.D.1983) (holding, under North Dakota law, claim for lung cancer was barred by limitations because plaintiff was earlier diagnosed with asbestos-related pulmonary disease).

release of the mesothelioma claim when he signed the settlement in exchange for $50,000.

**2. Three Year Statute of Limitations under FELA as to the Personal Injury Claim**

Even though the ruling on the release results in a dismissal, the Court shall consider the other issue raised, so if an appeal is made all issues may be reviewed.

FELA, 45 U.S.C. §56 states: "No action shall be maintained under this chapter unless commenced within three years from the day the cause of action accrued."  The Sixth Circuit Court of Appeals, in *Mounts v. Grand Trunk Western Railroad*, stated that under FELA the statute of limitations accrues after a plaintiff discovers both the initial injury and the cause of that injury. *Mounts v. Grand Trunk Western Railroad*, 198 F.3d 578, 581 (6th Cir. 2000).  In another Sixth Circuit Court of Appeals case, the Court, in an opinion by Judge Daughtrey addressing the discovery rule as applied to asbestos and chemical products liability cases, held that "'[a] cause of action will not accrue until the plaintiff discovers or in the exercise of reasonable diligence should have discovered not only that he has been injured *but also that his injury may have been caused by the defendant's conduct.*'" *Johnson v. Sandoz Pharmaceuticals Corporation*, 24 Fed. Appx. 533, 536 (6th Cir. 2001) (*quoting Louisville Trust Co. v. Johns-Mansville Prods. Corp.*, 580 S.W.2d 497, 501 (Ky. 1979) (emphasis included).

In the instant matter, Mr. Fleischman was diagnosed with mesothelioma cancer on September 19, 2000.  The suit against the Defendant was not filed until June 9, 2005, nearly five years after his diagnosis.  As such, the facts suggest that Mr. Fleischman discovered his injury on September 19, 2000.  However, the pertinent issue before the Court on this matter is whether Mr. or Mrs. Fleischman discovered, or should have reasonably discovered in the exercise of due diligence, the cause of his mesothelioma.  If Mr. or Mrs. Fleischman discovered or should have

20

discovered the cause before June 9, 2002, the claim should be barred by the statute of limitations; however, if, in the reasonable exercise of due diligence, they did not discover the cause of the mesothelioma until after that date, the claim for personal injuries may go forward.

In *Johnson*, the Sixth Circuit Court of Appeals, in analyzing the causal relationship of the discovery rule for purposes of a products liability action, looked to the Kentucky Supreme Court decision of *Wiseman v. Alliant Hospitals, Inc.*, 37 S.W.3d 709 (Ky. 2000). *Wiseman* involved a doctor's patient who began to experience back pain following a surgery in 1989. *Johnson*, 24 Fed. Appx. at 537. She informed the doctor who performed the surgery about the pain, and he told her the pain would eventually go away. *Id.* One month later, she saw a family physician who diagnosed her with a broken tailbone and prescribed pain pills. *Id.* The pain continued in her lower back until six years later in 1996, when another surgeon discovered a piece of a metal surgical instrument located under Wiseman's skin. *Id.* This led to a lawsuit against the original surgeon filed by the plaintiff in late 1996. *Id.*

In *Wiseman*, the Kentucky Supreme Court ultimately held that the "discovery rule entails knowledge that a plaintiff has a basis of a claim before the statute of limitations begins to run." *Id.* (*citing Wiseman*, 37 S.W.3d at 712). The Court in *Wiseman* reasoned that "[a]lthough Wiseman discovered that she had been harmed upon experiencing pain immediately after surgery, she was unaware of her injury-defined as the invasion of a legally protected interest until many years later." *Id.* (*citing Wiseman* at 712). From *Wiseman*, the Court in *Johnson* emphasized that the "unexplainable pain" suffered by the plaintiff in that matter precluded the plaintiff from discovering the case of her injury.

In contrast to *Wiseman*, the injury sustained by Mr. Fleischman in 2000 was not

21

"unexplainable."  The only known cause of mesothelioma at that time of his diagnosis was from exposure to asbestos.  *See Norfolk & Western Ry. Co. v. Ayers*, 538 U.S. 135, 142, n. 4 (2003). Mr. and Mrs. Fleischman knew that Mr. Fleischman had previously been diagnosed with asbestosis due to his exposure to asbestos while working for the Defendant.  In her deposition, Mrs. Fleischman stated that she did not know and/or could not recall whether Mr. Fleischman's doctors ever told him that his cancer was related to asbestos.  Assuming that Mr. and Mrs. Fleischman were not told the cause of the injury, the issue becomes whether the Mr. and Mrs. Fleischman still could have reasonably discovered the cause of the injury for purposes of FELA litigation.

In *Hayes v. Norfolk Southern Corporation*, the Sixth Circuit upheld a district court decision that determined a former railroad employee who sought damages for lung damage under FELA could not bring his claim against the defendant-railroad because the plaintiff was on notice of the cause of his injury more than three (3) years before he filed his claim. *Hayes v. Norfolk Southern Corporation*, 25 Fed. Appx. 308 (6th Cir. 2001).  In *Hayes*, the Court noted that "[b]ecause the statute of limitations is an affirmative defense, the defendant bears the initial burden of demonstrating in a FELA case that the statute of limitations has run...[h]owever, once the defendant produces evidence that a reasonable person, through the exercise of reasonable diligence, would or should have known of the injury and its more than three years before suit was filed...it becomes the plaintiff's duty to present evidence to the contrary." *Hayes*, 25 Fed. Appx. at 313-314 (*citing Mounts*, 198 F.3d at 582).  The Court reasoned that "there is no concern in this case that a reasonable person would fail to recognize the seriousness of the initial diagnosis of emphysema and attribute it to the 'transient aches and pains after a long day's

work'...[a] hospital diagnosis of emphysema in both lungs is sufficiently serious to put a reasonable person on notice of lung damage." *Id.* at 314.

Here, the Defendant has met its burden in showing that on its face the statute of limitations has run, and has sufficiently argued that the Plaintiff should have discovered that the cause of Mr. Fleischman's mesothelioma was likely from his asbestosis he contracted while working for the Defendant. The Fleischman's knew that Mr. Fleischman had asbestosis because he had been diagnosed with it eighteen (18) years before in 1982. The Fleischman's could have easily asked a physician what the cause of his mesothelioma was within twenty-two (22) months after his diagnosis before June 9, 2002. The Defendant also properly points out that neither the Plaintiff nor her husband took any measures to discover the cause of his mesothelioma during those twenty-two months, and therefore, did not act diligently in discovering the cause of Mr. Fleischman's mesothelioma. *See Ayers* at 142, n. 4 (noting "[a]sbestos is the only cause of mesothelioma established thus far, although some instances of the disease are not traceable to asbestos"). As such, the Defendant properly put the Plaintiff on notice that the statute of limitations had run because both Mr. and Mrs. Fleischman could have reasonably discovered that Mr. Fleischman's mesothelioma was more than likely caused by his exposure to asbestos while working for the Defendant, simply by consulting a physician. Therefore, the burden shifts to the Plaintiff who must present evidence to the contrary.

In its response to the Defendant's motion for summary judgment, the Plaintiff contends that the facts do not indicate that any doctor ever informed Mr. or Mrs. Fleischman of the cause of Mr. Fleischman's mesothelioma. Even when assuming the validity of this statement, the Plaintiff must still demonstrate that a reasonable person using due diligence would not have

23

discovered the cause of the cancer.  The Plaintiff does not offer any evidence to show that a reasonable person would not have discovered the cause of the mesothelioma or does not offer any evidence to show that the Mr. or Mrs. Fleischman made any effort to discover the cause of the mesothelioma.  Consequently, the Plaintiff has not met her burden in showing that a reasonable person acting with due diligence would not have discovered the cause of the injury. Accordingly, FELA's three year statute of limitations precludes the personal injury claim of the Plaintiff.

## CONCLUSION

For the foregoing reasons, the Defendant's Motion for Summary Judgment is **GRANTED** as to the Defendant's argument that the 1986 release precludes the current claims asserted by the Plaintiff.  In addition, the Defendant's Partial Motion for Summary Judgment is **GRANTED** as to barring the personal injury claim asserted by the Plaintiff on the grounds that it was not brought within FELA's three year statute of limitations.  Accordingly, all claims against the Defendant in this matter are **DISMISSED**.

An appropriate order shall issue.